# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JUMOKA JOHNSON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff.<br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>    Defendant. | Case No.: 19-cv-1240<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Jumoka Johnson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Portfolio Recovery Associates, LLC ("PRA") is a debt collection agency with its principal place of business located at 120 Corporate Blvd., Norfolk, Virginia

23502. It is a subsidiary of PRA Group, Inc. ("PRA Group"), a publicly traded company and one of the largest debt collectors in the United States.

6. PRA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

8. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); see, e.g., *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018) ; *see also Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017), *aff'd.* 916 F.3d 260; *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017), *aff'd.* 898 F.3d 364 ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector

if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

9. The primary purpose of PRA's business, and PRA's principal purpose, is the collection of consumer debts. *See, e.g.*, *Barbato*, 916 F.3d at 265; *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

10. PRA Group's 10k form, filed with the SEC on or around December 31, 2016, states:

> Our primary business is the purchase, collection and management of portfolios of nonperforming loans that have been charged-off by the credit grantor. The accounts we acquire are primarily the unpaid obligations of individuals owed to credit grantors, which include banks and other types of consumer, retail, and auto finance companies.

11. In addition to telephone and mail-based debt collection activities, PRA is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access ("CCAP") for PRA returns the error message: "Your request could not be processed. Your search has returned more than 5000 rows. Please try again."

12. CCAP shows that PRA filed 243 small claims actions in Milwaukee County in January 2018 alone. CCAP also shows that PRA filed 165 small claims actions in Milwaukee County in April 2019 alone. Upon information and belief, PRA filed hundreds of cases in Milwaukee County and in other Wisconsin counties each month, and virtually all or actually all of those cases are collection actions against Wisconsin consumers.

13. PRA is a debt collector as defined in 15 U.S.C. § 1692a.

3

# FACTS

14. On or about September 27, 2018, PRA mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Portfolio Recovery Associates, LLC" and originally owed to "CAPITAL ONE N.A." A copy of this letter is attached to this complaint as Exhibit A.

15. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, used only for personal, family, or household purposes.

16. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

17. Upon information and belief, Exhibit A was the first written communication Plaintiff received from PRA regarding the alleged debt referenced in Exhibit A.

18. Exhibit A contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors to provide along with their initial communications:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

19. Exhibit A contains the following:

> DISPUTES: Call 1-800-772-1413 or write to: Portfolio Recovery Associates, LLC, Disputes Department, 140 Corporate Blvd., Norfolk, VA 23502
> DISPUTES E-MAIL ADDRESS: PRA_Disputes@portfoliorecovery.com

20. On or about October 4, 2018, PRA mailed another debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this complaint as Exhibit B.

21. Upon information and belief, Exhibit B is a form letter, generated by computer, with the information specific to Plaintiff inserted by computer.

4

22. Upon information and belief, Exhibit B is a form debt collection letter, used by PRA to attempt to collect alleged debts.

23. Exhibit B contains the following text:

> DISPUTES: Call 1-800-772-1413 or write to: Portfolio Recovery Associates, LLC, Disputes Department, 140 Corporate Blvd., Norfolk, VA 23502
> DISPUTES E-MAIL ADDRESS: PRA_Disputes@portfoliorecovery.com

24. Exhibits A & B are deceptive, misleading, and confusing to the unsophisticated consumer.

25. The instruction in Exhibits A & B that the consumer may "Call 1-800-772-1413," is false, deceptive, misleading, and confusing to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice stated in Exhibit B, and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347-48 (7th Cir. 2018) (oral disputes do not entitle consumers to verification rights, including "the ultimate power vis-à-vis debt collectors: the power to demand cessation of all collection activities"); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 759 (6th Cir. 2018) ("*Macy II*") ("Including a materially false, deceptive, or misleading statement in a debt-collection communication may cause an individual 'to lose the very … rights that the law affords him.'"); *Macy v. GC Servs. Ltd. P'ship.*, Civil Action No. 3:15-cv-819-DJH, 2016 U.S. Dist. LEXIS 134421 *14-15 (W.D. Ky. Sep. 29, 2016) ("*Macy I*"); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-45 (E.D. Va. 2011).

26. 15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the

> consumer has paid the debt, send the consumer a written notice containing—
>
> …
>
> > (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

27. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see Macy II*, 897 F.3d at 757-58:

> GC's letters present a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letters provide misleading information about the manner in which the consumer can exercise the consumer's statutory right to obtain verification of the debt or information regarding the original creditor. In responding to a debt-collection notice, an oral inquiry or dispute of a debt's validity has different legal consequences than a written one. ... If a consumer contests a debt by telephone rather than in writing, the consumer loses most of the protections for debtors set forth in Section 1692g; the debt-collection agency is under no obligation to verify the debt and to cease all collection efforts as required by §1692g(b).

*See also Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (noting that Section 1692g "assigns lesser rights to debtors who orally dispute a debt and greater rights to debtors who dispute it in writing"); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("Debtors can protect certain basic rights through an oral dispute, but can trigger a broader set of rights by disputing a debt in writing."); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

28. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> **Disputed debts**
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

29. Congress adopted a specific FDCPA dispute procedure in 15 U.S.C. § 1692g "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n.6 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

30. <u>Exhibits A & B</u> confusingly and misleadingly direct the consumer to notify PRA about disputes without informing the consumer that oral disputes do not trigger verification.

31. Courts throughout the country have found that a debt collector overshadows the consumer's statutory validation rights by directing them to dispute their debts by telephone. *See Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482 (4th Cir. 1991) (holding the inclusion of the statement "PHONE US TODAY" in an initial collection letter to overshadow the

7

validation notice."); *Caprio*, 709 F.3d at 152 (3d Cir. 2013) (reversing dismissal of the plaintiff's overshadowing claims, because the letter at issue "can be reasonably read to have two or more different meanings, one of which is inaccurate, i.e., that [the plaintiff] could dispute the debt by making a telephone call."); *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417 (7th Cir. 2005); *Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87 (3d Cir. 2017) (unpublished) (holding the inclusion of the statement "SHOULD THERE BE ANY DISCREPANCY PLEASE CALL TOLL FREE" in a collection letter sent within the 30-day validation period overshadows the validation notice); *Seplak by Seplak v. IMBS, Inc.*, 1999 U.S. Dist. LEXIS 2106, 1999 WL 104730 (N.D Ill. February 23, 1999); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, 1997 WL 136313 (N.D. Ill. March 13, 1997); *Stebbins v. Allied Account Servs.*, 1991 U.S. Dist. LEXIS 21778, *7 (D. Conn. September 9, 1991); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. 1990); *Gaetano v. Payco of Wisconsin*, 774 F. Supp. 1404, 1411-12 (D. Conn. 1990); *Garrett v. Credit Bureau of Carbon County d/b/a Collection Center, Inc.*, 2018 Colo. App. LEXIS 1447 (Col. Ct. App. Oct. 18, 2018); *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *McCabe*, 272 F. Supp. 2d at 743-44 (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking*, 783 F. Supp. 2d at 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F. Supp. 2d 1164, 1170 (S.D. Cal. 2010); *Beasley v.*

8

*Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

32. PRA's instruction in Exhibits A & B that the consumer may communicate disputes by telephone rather than in writing contradict and overshadow the validation notice.

33. The instruction that the consumer may communicate her dispute by telephone would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled. *See Camacho*, 430 F.3d at 1082.

34. Furthermore, the overshadowing effect is compounded in the "follow-up" letter because Exhibit B does not reference the debtor's validation rights or explain the effect of disputing the debt orally or in writing. *Beaufrand v. Portfolio Recovery Assocs., LLC*, No. 18-CV-214, 2018 U.S. Dist. LEXIS 197339 *14-15 (E.D. Wis. Nov. 20, 2018); *Velazquez v. Fair Collections & Outsourcing, Inc.*, 2013 U.S. Dist. LEXIS 124895, at *17-22 ("the absence of a reprinted validation notice or reference to the debtor's right to request validation, combined with the specific text of a second letter, can create impermissible overshadowing or contradiction.");

9

*Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87 (3d Cir. 2017) ("Given the substance and form of the second letter, we conclude that it did overshadow and contradict the notice. In fact, the first letter appears to represent the functional equivalent of a validation notice set forth on the reverse side of a single letter. Just as the debt collector in *Caprio* set forth the 'please call' language on the front of the letter and 'relegated' the 'required Validation Notice' to 'the back side of the Collection Letter,' Certified Credit included 'PLEASE CALL' language in a letter mailed ten days before the expiration of the validation period—while 'relegating' the legally mandated validation notice to a letter it had sent to Laniado more than three weeks earlier. Unlike its counterpart in *Caprio* (which included an instruction in all capital letters directing Caprio to see the reverse side for important information), the March 5, 2014 letter did not even mention or otherwise refer to the February 13, 2014 letter. Given the circumstances, it is certainly conceivable that the least sophisticated debtor wishing to dispute the debt could follow the apparent instruction set forth in a mailing received shortly before the deadline and make an ineffective toll-free phone call to do so.") (internal citations omitted); *see also, e.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

35. Plaintiff read Exhibits A & B.

36. Plaintiff was confused and misled by Exhibits A & B.

37. The unsophisticated consumer would be confused and misled by Exhibits A & B.

38. Plaintiff had to spend time and money investigating Exhibits A & B, and the consequences of any potential responses to Exhibits A & B.

10

### *The FDCPA*

39. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Sols.*, No. 17-cv-1671, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after Spokeo, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc., 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge

to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

40. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

41. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers

12

from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

42. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

43. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

44. 15 U.S.C. § 1692f generally prohibits "any unfair or unconscionable means to collect or attempt to collect any debt."

45. 15 U.S.C. § 1692g states:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

(4) a statement that if the consumer notifies the debt collector **in writing** within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's **written request** within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(emphasis added)

46. 15 U.S.C. § 1692g(b) states, in part, that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

47. The Seventh Circuit has held that a debt collector must disclose the debtor's rights to obtain verification in a non-confusing manner, and must ensure its representations to debtors do not contradict the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.").

48. The false statement or implication during the thirty-day validation period that a consumer may effectively communicate her dispute by telephone is a material false statement. *E.g., Flowers*, 1997 U.S. Dist. LEXIS 6070, *7-9.

14

## COUNT I – FDCPA

49. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

50. By representing in an initial debt collection letter, containing the debt validation notice, that the consumer may effectively communicate their dispute by telephone *or* in writing, Exhibit A contradicts and overshadows the disclosure of the consumer's rights to obtain verification of the debt and the name and address of the original creditor.

51. Exhibit A is likewise misleading because the letters imply that a consumer may effectively communicate a dispute by telephone rather than in writing.

52. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## COUNT II - FDCPA

53. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

54. By representing in a follow-up letter, sent within the 30-day FDCPA validation period, that the consumer may effectively communicate their dispute by telephone, Exhibits B contradicts and overshadows the disclosure of the consumer's rights to obtain verification of the debt and the name and address of the original creditor, which were included in PRA's previous letter sent to Plaintiffs less than 30 days prior.

55. Exhibit B is likewise misleading because the letters imply that a consumer may effectively communicate a dispute by telephone rather than in writing.

56. Defendants thereby violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## CLASS ALLEGATIONS

57. Plaintiff brings this action on behalf of four prospective classes.

15

58. Class I (the "Statewide Initial Letter Class") consists of (a) all natural persons in the state of Wisconsin, (b) to whom PRA mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) regarding an alleged debt which was incurred for personal, family, or household purposes, (d) between August 26, 2018 and August 26, 2019, inclusive, (e) not returned by the postal service.

59. Class I (the "Nationwide Initial Letter Class") consists of (a) all natural persons in the United States, (b) to whom PRA mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) regarding an alleged debt which was incurred for personal, family, or household purposes, (d) between August 26, 2018 and August 26, 2019, inclusive, (e) not returned by the postal service.

60. Class III (the "Statewide Follow-Up Letter Class") consists of (a) all natural persons in the state of Wisconsin, (b) to whom PRA mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) and to whom PRA subsequently, within fewer than thirty days, mailed a collection letter in the form of Exhibit B the Complaint in this Action, (d) where the letters sought to collect the same alleged debt, (e) which was incurred for personal, family, or household services, (f) and where the second letter was mailed between August 26, 2018 and August 26, 2019, inclusive, (g) and neither letter was returned by the postal service.

61. Class IV (the "Nationwide Follow-Up Letter Class") consists of (a) all natural persons in the United States, (b) to whom PRA mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) and to whom PRA subsequently, within fewer than thirty days, mailed a collection letter in the form of Exhibit B the Complaint in this Action, (d) where both letters sought to collect the same alleged debt, (e) which was incurred for personal, family,

or household services, (f) and where the second letter was mailed between August 26, 2018 and August 26, 2019, inclusive, (g) and neither letter was returned by the postal service.

62. Each class is so numerous that joinder is impracticable.

63. Upon information and belief, there are more than 50 members of each class.

64. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

65. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

66. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

67. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

68. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: August 26, 2019

17

Case 2:19-cv-01240-BHL    Filed 08/26/19    Page 17 of 18    Document 1

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com